NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PHILLIP M. ADAMS & ASSOCIATES, LLC**,
*Plaintiff-Cross Appellant,*

**v.**

**DELL COMPUTER CORPORATION, ITE TECHNOLOGIES, INC., MPC COMPUTERS, MSI COMPUTER CORP., MICRO-STAR INTERNATIONAL, SONY ELECTRONICS, INC., AND WINBOND ELECTRONICS CORPORATION**,
*Defendants,*

**AND**

**ASUSTEK COMPUTER INC. AND ASUS COMPUTER INTERNATIONAL, INC.**,
*Defendants-Appellants.*

_____

2012-1238

_____

Appeals from the United States District Court for the District of Utah in Case No. 05-CV-0064, Chief Judge Ted Stewart.

_____

Decided: March 18, 2013

_____

GREGORY D. PHILLIPS, Phillips, Ryther & Winchester, of Salt Lake City, Utah, argued for plaintiff-Cross Appellant. With him on the brief was JACOB R. ADAMS, Dumke Law, of New York, New York.

RONALD S. LEMIEUX, Cooley LLP, of Palo Alto, California, argued for defendants-appellants. With him on the brief was VIDYA R. BHAKAR. Of counsel on the brief was PHILLIP E. MORTON, of Reston, Virginia.

————————————

Before PROST, MOORE, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

The district court judgments now on appeal arose from patent infringement and trade secret litigation between Phillip M. Adams & Associates, LLC ("PMAA") and ASUSTeK Computer, Inc. ("ASUSTeK") and Asus Computer International ("ACI") (collectively, "ASUS"). Over the course of this litigation, the district court: (1) imposed an adverse inference sanction against ASUS for spoliation of evidence; (2) granted summary judgment dismissing PMAA's trade secrets claim for untimeliness; (3) denied ASUS's post-verdict motion for judgment as a matter of law ("JMOL") of noninfringement; and (4) denied PMAA's motion for attorney fees under 35 U.S.C. § 285. ASUS appeals from the imposition of an adverse inference sanction and the denial of its motion for JMOL. PMAA cross appeals from the summary judgment dismissing its trade secrets claim and the denial of attorney fees. Because the district court abused its discretion in granting an adverse inference sanction against ASUS and because there is inadequate evidence to support a jury verdict of infringement absent such adverse inferences, we reverse the denial of JMOL of noninfringement. The district court's grant of summary judgment and denial of attorney fees are affirmed.

BACKGROUND

I.

Phillip M. Adams ("Dr. Adams") is the inventor of PMAA's U.S. Patent No. 5,983,002 ("the '002 patent"). In the early 1990s, Dr. Adams discovered a data corruption defect affecting Floppy Disk Controllers ("FDC") in certain Super I/O computer chips.[1] Dr. Adams developed a technique to detect such defects, and on November 9, 1999, he obtained the '002 patent claiming this detection system and method.

The FDC controls "[d]ata transfer to and from a floppy diskette," including transfers to and from the computer's Central Processing Unit ("CPU"). '002 patent col. 1 ll. 35-38. The FDC must transfer such data at a specified rate so that the data is written to the correct location on the spinning floppy diskette. *Id.* col. 1 ll. 39-41. In some situations, however, the data transfer rate fails to match up to the correct location on the diskette. When this occurs, the FDC generally detects this failure and "aborts the write operation and signals to the CPU that a data underrun condition has occurred." *Id.* col. 1 ll. 42-47. However, as noted above, a defect in certain FDCs results in a failure to detect a "data underrun on the last byte of a diskette read or write operation." *Id.* col. 1 ll. 61-63. Instead of being detected and aborted, this data underrun results in incorrect data being "written to the diskette and validated by the FDC."[2] *Id.* col. 2 ll. 4-5. The '002 patent

---

[1]    Super I/O computer chips perform multiple input/output functions, including the function of FDCs.

[2]    The specification explains the concerns associated with such an FDC defect: "Maintaining the integrity of the stored data is essential to the proper function of [computer systems like those used by businesses and government national defense systems]. . . ." Id. col. 1 ll. 18-21.

claims an apparatus and a method for detecting such FDC defects.

Independent claim 1 discloses an apparatus comprising: (1) a processor executing a detection program, (2) a memory device and a system clock both connected to the processor, (3) a media drive for storage, (4) an FDC connected to the media drive, and (5) a direct memory access controller connected to both the FDC and the memory device that controls transfers of data between the two. *Id.* col. 1 ll. 17-36. Independent claim 12 discloses a method comprised of delaying the last byte of data when transferring data from the memory device to the media drive through the FDC; in short, it forces an underrun error in the FDC's data transfer. After the transfer is complete, claim 12 teaches "verifying whether the floppy diskette controller detected the underrun error." *Id.* col. 1 ll. 29-30. If it did not detect the error, the FDC is defective.

## II.

During the late 1990s and early 2000s, ASUSTeK, a Taiwan-based manufacturer of computer motherboards, was a supplier to Sony and Hewlett Packard ("HP"), among other computer companies; ACI was ASUSTeK's United States sales and inventory management subsidiary.[3] ASUS's motherboards incorporated Super I/O chips purchased from Winbond Electronics Corporation ("Winbond"), among others.

In 1999, Dr. Adams cooperated in a class action lawsuit against Toshiba Corporation ("Toshiba") related to defective FDCs in Toshiba computers, which resulted in

---

[3] For the sake of convenience, and because it was the predominant practice of the district court and the parties, the remainder of this opinion will refer to both ASUSTeK and ACI as "ASUS," even when only one entity is implicated.

Toshiba paying a $2.1 billion settlement. Following announcement of the Toshiba settlement, there was "industry-wide knowledge" of FDC defects and "the pervasive apprehension of pending litigation regarding the defect." *Phillip M. Adams & Assocs. v. ASUSTeK Computer, Inc.*, No. 05-64, slip op. at 5 (D. Utah Sept. 27, 2010) ("Sanctions Op."). In late 1999, the same law firm that brought the Toshiba litigation filed a similar suit against HP, one of ASUS's customers. HP then sent an email to ASUS asking it to determine whether the ASUS motherboards sold to HP contained the FDC defect. ASUS assigned one of its Taiwan-based engineers, Sam Yang, to develop software to detect such FDC defects. The result was an executable software called IFDC.exe, which Mr. Yang provided to HP and Winbond in January 2000.

## III.

On May 12, 2005, PMAA filed suit against Sony and several other defendants, alleging infringement of PMAA's '002 patent and other patents related to the detection of FDC defects. Sony then filed a third-party complaint against Winbond and ASUS on the ground that the allegations against Sony were based on "Super I/O chips designed, manufactured, tested, and sold by Winbond . . . and computers and motherboards containing these Super I/O chips designed, manufactured, tested and sold by ASUS." J.A.408. On May 3, 2007, PMAA asserted cross claims for patent infringement and misappropriation of trade secrets against Winbond and ASUS. The trade secrets claim was dismissed for untimeliness. *Phillip M. Adams & Assocs. v. Winbond Elecs. Corp.*, No. 05-64 (D. Utah Aug. 25, 2010) ("Summary Judgment Op."). The parties then proceeded to trial, with PMAA asserting multiple patents, including the '002 patent, against ASUS, Winbond, and other remaining defendants who had not already settled with PMAA.

On September 27, 2010, the district court reversed the magistrate judge's earlier pretrial order denying spoliation sanctions and ordered an adverse inference sanction against ASUS for spoliation of evidence, based on ASUS's failure to produce the source code for its IFDC.exe program.[4] Sanctions Op. at 10. Based on this spoliation of evidence, the district court found the case was exceptional under 35 U.S.C. § 285. *Phillip M. Adams & Assocs. v. Sony Elecs. Inc.*, No. 05-64, slip op. at 5 (D. Utah Sept. 26, 2011) ("Attorney Fees Op."). However, it declined to award attorney fees to PMAA under § 285, finding the adverse inference sanction was an adequate penalty under the circumstances. *Id.*

On September 27, 2010, the same day as the district court's sanction order, ASUS moved for JMOL pursuant to Fed. R. Civ. P. 50(a), which was denied by the district court. The jury then returned verdicts of infringement of various claims of the '002 patent against ASUS and Winbond.[5] However, the other two patents asserted by PMAA were found not to be infringed. After the jury verdict, Winbond settled with PMAA. ASUS, on the other hand, renewed its motion for JMOL pursuant to Fed. R. Civ. P. 50(b). The district court denied the motion, letting the jury verdict stand. *Phillip M. Adams & Assocs. v. Sony Elecs. Inc.*, No. 05-64 (D. Utah Sept. 26, 2011) ("JMOL Op."). ASUS filed this timely appeal, and PMAA cross appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

---

[4]    Although ASUS did not provide the IFDC.exe source code to PMAA, it did provide the IFDC.exe program itself.

[5]    In particular, the jury found that ASUSTeK infringed claims 1, 11, 12, and 15 of the '002 patent and that ACI infringed claims 1 and 15 of the '002 patent.

## DISCUSSION

Four separate issues are appealed to this court. ASUS appeals (1) the adverse inference sanction and (2) the denial of its motion for JMOL.  PMAA cross appeals (1) the grant of summary judgment dismissing its trade secrets claim and (2) the refusal to grant it attorney fees under 35 U.S.C. § 285.  Each issue is addressed in turn.

### I. ASUS'S APPEAL

### 1. THE DISTRICT COURT ERRED IN IMPOSING AN ADVERSE INFERENCE SANCTION AGAINST ASUS

ASUS appeals from the district court's imposition of an adverse inference sanction for spoliation of evidence. This court reviews such procedural matters not unique to patent law under the law of the regional circuit.  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1002 (Fed. Cir. 2008). The Tenth Circuit reviews a district court's ruling on a motion for spoliation sanctions for abuse of discretion. *Burlington N. and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

PMAA's pretrial motion for spoliation sanctions against ASUS was referred to a magistrate judge. The magistrate judge found ASUS's failure to produce the IFDC.exe source code during discovery violated its duty to preserve evidence.  However, he also found that "[t]he evidence that Adams lists from other parties does not show that ASUS has willfully spoliated its evidence . . . . In fact, the evidence that Adams obtained from other parties shows just the opposite—other parties also have very little documentary evidence involving ASUS." *Phillip M. Adams & Assocs. v. Winbond Elecs. Corp.*, No. 05-64, slip op. at 3 (D. Utah July 21, 2010) ("Magistrate's Sanctions Op.").  Accordingly, the magistrate judge concluded there had been no bad faith spoliation, and thus denied

sanctions.[6]   PMAA objected to the magistrate judge's order.

According to statute and the Federal Rules of Civil Procedure, a district court may reconsider a magistrate judge's nondispositive pretrial order, such as an order denying discovery sanctions, only if such order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Following PMAA's objection, the district court found no clear error in the magistrate judge's order; that is, it left intact the magistrate judge's finding of no bad faith. Sanctions Op. at 10. In spite of this finding, the district court determined a sanction was warranted and imposed a broad adverse inference sanction against ASUS.[7] *Id.*

---

[6] The magistrate judge issued two decisions relating to discovery sanctions. In 2009, the magistrate found ASUS violated its duty to preserve evidence of the IFDC.exe source code, but requested additional evidentiary submission and briefing on whether PMAA had suffered prejudice as a result. In 2010, the magistrate judge denied PMAA's motion for sanctions, finding there had been no bad faith spoliation by ASUS and an inadequate showing of prejudice to PMAA. With respect to prejudice, the magistrate judge reasoned that both parties could present their evidence to the jury, and "[t]he jury will consider these facts and draw their inferences." Magistrate's Sanctions Op. at 6. This was not an adverse inference sanction, however, but simply an analysis that such evidence was relevant, and that an opportunity to present its argument to the jury meant that PMAA suffered little prejudice from the missing evidence.

[7] The district court's decision could be interpreted as making an independent finding of bad faith. Sanctions Op. at 2 (finding ASUS failed to preserve certain evidence with "pinpoint precision."). If this was the case, the district court abused its discretion by failing to properly

A spoliation sanction is proper under Tenth Circuit law when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N.*, 505 F.3d at 1032. An adverse inference sanction in particular "*must be predicated on the bad faith* of the party destroying the records." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (emphasis added). The district court committed legal error by imposing an adverse inference sanction absent a finding of bad faith. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). Accordingly, we reverse the district court's imposition of an adverse inference sanction, and consider whether there is adequate evidence to support the jury verdicts against ASUS absent such adverse inferences.

## 2. THE DISTRICT COURT ERRED IN DENYING JMOL OF NONINFRINGEMENT

The Tenth Circuit reviews *de novo* the denial of a motion for JMOL, and reapplies the district court's standard of review. *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1110-11 (10th Cir. 2005). JMOL is proper when "the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." *Id.* (internal quotation marks and citations omitted). Moreover, review of a jury verdict is "limited to determining whether that verdict is supported by substantial evidence when the record is viewed in the light

---

defer to the magistrate judge's factual findings, as it is required to do when reviewing a pretrial order. Fed. R. Civ. P. 72(a).

most favorable to the prevailing party."[8] *Beck v. N. Natural Gas Co.*, 170 F.3d 1018, 1021 (10th Cir. 1999).

The evidence presented in PMAA's briefing to this court can be summarized into two categories: evidence of ASUS's allegedly infringing IFDC.exe program and evidence of ASUS's allegedly infringing certification testing of its motherboards.[9]   On appeal, ASUS contends this

---

[8] As a preliminary matter, PMAA argues ASUS was precluded from challenging the jury verdict regarding claim 12, the only method claim, because claim 12 was not challenged in ASUS's Rule 50(a) motion for JMOL. However, PMAA did not raise this issue before the district court, and instead represented that ASUS's 50(b) motion, which included the challenge to claim 12, was "simply a rehash" of its earlier 50(a) motion. J.A.6465; *see also* J.A.6476, 6488.   Therefore, it is proper to review the JMOL in its entirety, including the challenge to claim 12. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1076 n.3 (10th Cir. 2002) ("When the non-moving party fails to raise the inadequacy of a Rule 50(a) motion in opposition to a Rule 50(b) motion, that party cannot raise waiver as an argument on appeal.").

[9] PMAA maintains that it has more evidence than this, but the record does not support these assertions. For instance, PMAA's opening brief argues that "[t]here is substantial evidence that ASUS'[s] infringing testing was not limited to IFDC.EXE in 2000." PMAA's Opening Br. at 46.   However, the citations PMAA provides in this section refer to a detector program provided by ASUS to Winbond in January 2000, which is the very IFDC.exe program and 1999-2000 timeframe PMAA seeks to disclaim.   Any listed citations that do not relate to IFDC.exe do not appear to implicate ASUS at all. *See* Trial Ex. 29 at J.A.7281 (regarding testing efforts undertaken by Winbond using test software provided by ASUS in January 2000); Trial Ex. 30 at J.A.7299 (referring to the same);

evidence is insufficient to show infringement within the United States during the six years before the infringement claim was filed.

With respect to the first category of evidence, PMAA submitted evidence showing that ASUS's IFDC.exe program infringed the '002 patent. PMAA argues ASUS's use of the IFDC.exe program within the United States is sufficient to support a jury verdict of infringement under 35 U.S.C. § 271(a). However, evidence of the IFDC.exe program is limited to the 2000 time period, over six years before PMAA filed its claim for patent infringement against ASUS.

Title 35 U.S.C. § 286 sets forth a limitation on damages:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

In applying this section, "one starts from the filing of a complaint or counterclaim and counts *backward* to determine the date before which infringing *acts* cannot give rise to a right to recover damages." *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*, 754 F.2d 345, 348 (Fed. Cir. 1985) (emphases in original). Here, PMAA may not recover for infringing acts taking place before May 3, 2001, six years before it brought suit against ASUS. PMAA provided evidence that the IFDC.exe

---

Trial Ex. 35 at 7303 (referring to same); Trial Ex. 84 at 7325 (referring to same); Trial Ex. 369 at J.A.7472 (referring to same); Trial Ex. 98 at J.A.7335 (emails primarily between Winbond and HP employees, one of which was sent to ASUS employees but otherwise making no reference to ASUS); Trial Ex. 155 at J.A.7357 (same).

program was completed in 2000, and was sent to Winbond and HP on January 27, 2000. ASUS employees may have used the IFDC.exe program on HP products during a trip to Cupertino, California in early 2000. These events all occurred in 2000, over six years before PMAA filed suit against ASUS. Accordingly, the IFDC.exe evidence cannot form the basis for the jury verdict of infringement.[10]

With respect to PMAA's second category of evidence, PMAA presented testimony that ASUS engaged in certification testing of its motherboards, including stress tests, Federal Communications Commission certification tests, European Conformity certifications tests, and Windows operating system compliance tests. PMAA argues this certification testing infringed the '002 patent and that ASUS's motherboards were "made by" this allegedly infringing testing such that importation of the mother-

---

[10] ASUS filed U.S. Patent Application 09/976,063 ("the '063 application") on October 15, 2001, entitled Method for Preventing Data Corruption by a Floppy Diskette Controller, but abandoned it in 2005. PMAA argues that "*[b]ecause of the great deal of evidence spoliated by ASUS, and the related jury instruction*, the jury was free to infer that [the infringing IFDC.exe] testing had occurred in the United States up until at least 2005 when ASUS finally abandoned its U.S. patent application." PMAA's Opening Br. at 49-50 (emphasis added). However, even this argument appears to concede that, absent the adverse inference jury instruction, it is not reasonable to infer the existence of infringing testing based solely on the prosecution of a patent application. *See Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987) ("Although a jury is entitled to draw reasonable inferences from circumstantial evidence, reasonable inferences themselves must be more than speculation and conjecture.").

boards into the United States constituted infringement under 35 U.S.C. § 271(g). However, this argument fails on two counts. First, the record does not show that the certification testing constituted infringement of the '002 patent. When asked on cross examination whether any of the certification testing ran a detector program to reveal an FDC defect and thereby infringed the '002 patent, PMAA's expert Dr. Kraft testified that such proof was "in a test report." J.A.4698. Dr. Kraft then admitted that "if it [was] not in the test report . . . , then [he had] no evidence." *Id.* In its brief, PMAA does not assert that the referenced test report had any such information, but simply argues that the certification testing logically must include FDC testing. The fact that ASUS's certification testing comprehensively tested all parts of the machine does not show that ASUS infringed the '002 patent by forcing a data underrun to detect an FDC defect.

Second, even assuming the certification testing constituted infringement of the '002 patent, the motherboards were not "made by" the certification testing pursuant to 35 U.S.C. § 271(g). The mere "production of information is not covered" by § 271(g). *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003). PMAA's argument that ASUS's certification testing was "integrated into ASUS'[s] manufacturing process" is thus unpersuasive. PMAA's Opening Br. at 57. Rather, the certification testing constituted mere "production of information" that ASUS's motherboards were or were not compliant with certification standards. Accordingly, certification testing was not part of the process to "make" the motherboards. PMAA thus cannot show that ASUS's importation of motherboards into the United States constitutes infringement under § 271(g).[11]

---

[11] ASUS also argues that Winbond's post-verdict settlement agreement with PMAA releases ASUS from infringement liability. This settlement agreement grant-

In sum, PMAA has failed to present substantial evidence of infringement within the United States after May 3, 2001. Accordingly, the district court erred in denying ASUS's post-verdict motion for JMOL, and this court reverses that determination.

## II. PMAA's Cross Appeal

PMAA cross appeals the grant of summary judgment dismissing its trade secrets claim for untimeliness and the denial of its motion for attorney fees under 38 U.S.C. § 285.

### 1. The District Court Correctly Granted Summary Judgment Dismissing PMAA's Trade Secrets Claim for Untimeliness

This court reviews the grant of a motion for summary judgment under the law of the regional circuit. The Tenth Circuit subjects the grant of summary judgment to *de novo* review. *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

ed Winbond a retroactive license covering Winbond-made chips. ASUS contends this settlement releases ASUS, as a customer of Winbond Super I/O chips, from all liability to PMAA relating to ASUS's purchase of Winbond products. PMAA, however, maintains that ASUS's infringing testing was not limited to Winbond products, and that the Winbond settlement would not release ASUS for ASUS's independent liability. Even assuming PMAA's argument is correct, PMAA has failed to present substantial evidence to support a finding of any such independent infringement by ASUS in the United States during the relevant time period.

The Utah Uniform Trade Secrets Act ("Trade Secrets Act") provides that "[a]n action for [trade secret] misappropriation shall be brought within three years after the misappropriation is discovered or, by the exercise of reasonable diligence, should have been discovered." Utah Code Ann. § 13-24-7 (LexisNexis 2012). The Utah Supreme Court has interpreted such language to establish a "statutory discovery rule," under which a statute of limitations is triggered "when a plaintiff first has actual or constructive knowledge of the relevant facts forming the basis of the cause of action." *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005).

The district court found that PMAA had constructive knowledge of its trade secrets claim against ASUS by March 4, 2004—over three years before PMAA filed its cross claim against ASUS on May 3, 2007—when PMAA's lawyer sent an email to Winbond implicating both Winbond and ASUS in "potential theft" of PMAA's patented programs ("the March 4th email"). J.A.3174. The March 4th email stated:

> [W]e discovered this past week that Gateway somehow obtained an unauthorized copy of Dr. Adams' Detector from Quanta in 2000-2001. We believe that Winbond also obtained or had possession of *a copy of Dr. Adams' Detector* and related programs. . . .

> [W]e have also learned that Gateway claims that Winbond's detector (test utility) was *actually obtained from ASUS*, who developed the test utility from an IBM supplied design. These two files, ifdc.exe and w2sec.exe, constitute the Winbond test utility. Due to the legal ramifications *and potential theft involved*, we would appreciate a copy of these files immediately so that we can exonerate your client.

J.A.3174 (emphases added). The district court determined that this email reflected PMAA's knowledge "that ASUS had developed a utility that was a 'potential theft' of what [PMAA] claims to be trade secrets." Summary Judgment Op. at 5. Accordingly, the district court found the statute of limitations was triggered on March 4, 2004, and had expired by May 3, 2007, when PMAA filed its claim against ASUS. *Id.* at 5-6.

PMAA argues the district court erred in granting summary judgment because at the time of the email "there was no evidence . . . that ASUS (1) had used PMAA's trade secrets, and (2) knew or had reason to know that it was not in rightful possession of the information."[12] PMAA's Opening Br. at 64. However, consideration of the elements of a trade secrets claim confirms the district court's conclusion that the March 4th email shows constructive knowledge sufficient to trigger the statute of limitations.

The Trade Secret Act provides that "a complainant is entitled to recover damages for misappropriation." Utah Code Ann. § 13-24-4 (LexisNexis 2012). Misappropriation is defined as follows:

> (a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

---

[12] In arguing that its trade secrets claim was not untimely, PMAA focuses on the district court's earlier cautioning that "'reliance on third-hand information is inappropriate.'" PMAA's Opening Br. at 63 (quoting J.A.3886.275). However, the district court's statement regarding third-hand information was chastising another party for nonproduction of requested evidence in discovery, not cautioning PMAA about when to file its trade secrets claim.

(b) disclosure or use of a trade secret of another without express or implied consent by a person who:

> (i) used improper means to acquire knowledge of the trade secret; or

> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

>> (A) derived from or through a person who had utilized improper means to acquire it;

>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. . . .

Utah Code Ann. § 13-24-2(2) (LexisNexis 2012). The March 4th email reflects PMAA's knowledge that ASUS obtained or developed a copy of Dr. Adams's Detector from IBM and provided it to Winbond. *See* March 4th email at J.A.3174 (alleging Winbond had a "copy of Dr. Adams'[s] Detector" and that it had obtained such detector from ASUS, "who developed the test utility from an IBM supplied design."). This is adequate to show constructive knowledge of misappropriation pursuant to the Trade Secrets Act. That is, if IBM was authorized to have the detector, ASUS's disclosure to Winbond would constitute "disclosure" of a trade secret that was "derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." Utah Code Ann. § 13-24-2(2)(b)(ii)(C) (LexisNexis 2012). If, on the other hand, IBM was not authorized to have the programs, ASUS's acquisition was prohibited misappropriation, *and* its disclosure to Winbond was "derived from or through a person who had utilized improper means to

acquire it." *Id.* § 13-24-2(2)(a),(b)(ii)(A) (LexisNexis 2012). PMAA's contention that it did not know whether ASUS "used" the misappropriated detector program is thus inapposite, because the March 4th email reflects sufficient knowledge to meet the elements of misappropriation in a variety of ways.

Additionally, PMAA's argument that it had no information of ASUS's state of mind does not defeat PMAA's constructive knowledge of facts sufficient to make up its trade secrets claim. The statutory discovery rule "does not allow plaintiffs to delay filing suit until they have ascertained every last detail of their claims." *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1124 (D. Utah 1999); *see also id.* (quoting *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 889 (Utah 1993)) ("'All that is required [to trigger the statute of limitations] is . . . sufficient information to apprise [the plaintiff of the underlying cause of action] so as to put them on notice to make further inquiry if they harbor doubts or questions' about the defendant's actions.") (alterations in *McCollin*).[13] Additionally, the fact that ASUS did not admit it had stolen PMAA's trade secrets when questioned, PMAA's Opening Br. at 69, does not defeat PMAA's "constructive knowledge" of facts sufficient to make up its trade secrets claim. Statutes of limitations would be rendered meaningless if claims did not accrue until the potential defendant admitted wrongdoing.

In sum, there is no genuine issue of material fact that PMAA had constructive knowledge of its trade secrets

---

[13] With respect to state of mind, the Utah Supreme Court has held that constructive notice of a fraud claim was shown as a matter of law by a letter in which plaintiffs accused defendant of the underlying fraudulent conduct, even though the letter did not make allegations regarding defendant's state of mind. Allred ex rel. Jensen v. Allred, 182 P.3d 337, 345 (Utah 2008).

claim by March 4, 2004, more than three years before it brought its claim against ASUS on May 3, 2007. The district court's grant of summary judgment is thus affirmed.

### 2. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING ATTORNEY FEES

The district court found that ASUS's litigation misconduct relating to its spoliation of the IFDC.exe source code made the case "exceptional" under 35 U.S.C. § 285. Attorney Fees Op. at 5. However, the court declined to grant attorney fees to penalize such spoliation, having already imposed an adverse inference sanction for the same conduct. *Id.* On appeal, PMAA argues this denial of attorney fees was an abuse of discretion.

"A district court abuses its discretion when 'its decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary or fanciful.'" *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1328 (Fed. Cir. 2003) (quoting *Cybor Corp. v. FAS Techs.*, 138 F.3d 1338, 1460 (Fed. Cir. 1998)). None of these situations is present here. To the contrary, it was reasonable for the district court to decide against imposing two different penalties for the same conduct. Furthermore, this court's determination with respect to ASUS's motion for JMOL of noninfringement means that PMAA is no longer a "prevailing party" in the case, making attorney fees under § 285 inappropriate. 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the *prevailing party*.") (emphasis added).

### CONCLUSION

For the foregoing reasons, this court reverses the district court's imposition of an adverse inference sanction, and its denial of ASUS's motion for JMOL. However, the grant of summary judgment dismissing PMAA's trade

secrets claim and the denial of attorney fees under 35 U.S.C. § 285 are affirmed.

**REVERSE-IN-PART and AFFIRM-IN-PART**